FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
20 MAR 19 PM 1:09
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOE HAND PROMOTIONS, INC.,     \*

    Plaintiff,     \*

    v.     \*     CV 118-127

VONCELLIES A. ALLEN,
individually and d/b/a Level 9
Sports Bar & Grill; and EURL
KITTLES,

    Defendants.

## O R D E R

Presently before the Court is Plaintiff Joe Hand Promotions, Inc.'s motion for summary judgment against Defendant Voncellies A. Allen. The other defendant in the case, Eurl Kittles, has not appeared, plead or otherwise defended. The Clerk entered default against him on May 10, 2019. Plaintiff has therefore filed a motion for default judgment against Defendant Kittles. The Court resolves both motions herein.

### I. BACKGROUND

Plaintiff specializes in distributing and licensing premier sporting events to commercial establishments. (Am. Compl., Doc. 19, ¶ 4.) In this capacity, Plaintiff was granted the exclusive nationwide television distribution rights to the *Floyd Mayweather,*

*Jr. v. Conor* McGregor fight program (the "Program"), which took place on August 26, 2017. (Id. ¶ 5.) Plaintiff was also assigned ownership of the right to distribute and authorize the public performance of the Program from the registered copyright owner. (Id. ¶ 6.)

Defendant Allen is the sole owner of Level 9 Sports Bar & Grill ("Level 9"). (Pl.'s St. of Undisputed Material Facts, Doc. 26-1, ¶ 5.) Defendant Allen did not contract or pay Plaintiff the necessary sublicensing fee to obtain the Program for display at Level 9.[1] (Id. ¶ 6.) Nevertheless, Level 9 televised the Program to its patrons on August 26, 2017 through use of an individual's Amazon Firestick.[2] (Id. ¶ 7.)

On August 14, 2018, Plaintiff filed the instant case against Defendant Allen for violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and the Communications Act of 1934, as amended: 47 U.S.C. § 553 (generally referred to as "Cable Piracy") and 47 U.S.C. § 605 (generally referred to as "Satellite Piracy").

At deposition on February 4, 2019, Defendant Allen testified that while the Program was promoted on Level 9's Facebook page a few days prior, when he called to inquire about obtaining the

---

[1] The Amended Complaint alleges that Plaintiff licensed the Program to over 6,000 establishments nationwide authorizing them to show the Program to their patrons, customers, members, and/or guests, through acceptance of a commercial license fee, which fee was determined by the capacity of the establishment. (Am. Compl. ¶ 11.)

[2] In this way, the Program was obtained at the "non-commercial" use fee which was substantially lower. (Am. Compl. ¶¶ 14-15.)

Program, he learned it would be thousands of dollars to do so.[3] (Dep. of Voncelllies Allen, Doc. 31-1, at 17-19, 21-22; see also Pl.'s St. of Undisputed Material Facts, Ex. G.) At this point, Defendant Allen told his promoter/manager that while he would honor other aspects of the promotional offer to patrons, he was not going to purchase the Program. (Id. at 22-23.) The Level 9 promoter/manager was Eurl Kittles. According to Defendant Allen, he learned after he was sued that Mr. Kittles showed the Program that evening through use of the Firestick. (Id. at 26-27.) Defendant Allen attests that he was not at Level 9 when the Program was aired. (Id. at 23-24.)

On March 11, 2019, Plaintiff moved to amend the complaint to add Mr. Kittles as a defendant upon Defendant Allen's testimony that Mr. Kittles was directly responsible for airing the Program at Level 9 in August 2017. Upon leave of court, Plaintiff filed the Amended Complaint on March 28, 2019, and timely served Defendant Kittles. Defendant Kittles failed to appear, plead or otherwise defend; the Clerk entered default on May 10, 2019.

At present, Plaintiff has moved for default judgment against Defendant Kittles. Plaintiff also seeks summary judgment against Defendant Allen on its claim under the Copyright Act, arguing that

---

[3] Defendant Allen testified that he did not operate or have access to Level 9's Facebook account; his promoter/manager did. (Allen Dep. at 17.) Nevertheless, it is undisputed that Defendant Allen was aware of the Facebook promotion of the Program on the Level 9 page ahead of time. Defendant Allen testified that he often learned of his club's promotion events through the Facebook page. (Id. at 18-19.)

3

liability is undisputed as against him and that the Court should award statutory damages in the amount of $150,000. Plaintiff also seeks an award of attorney's fees. Defendant Allen responds, admitting liability but requesting the Court impose the minimum of $750 in statutory damages; he also opposes the imposition of attorney's fees.

## II. LEGAL STANDARDS

A. <u>Summary Judgment</u>

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

4

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

The Clerk gave the nonmoving party, Defendant Allen, notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. 27.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

B.  Default Judgment

After entering an order of default, the district court has discretion to issue a default judgment. See Fed. R. Civ. P. 55(b). "Defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for a judgment entered . . . . The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). A defendant, by his default,

5

is only deemed to have admitted the "plaintiff's well-pleaded allegations of fact." Id. "[T]hree distinct matters [are] essential in considering any default judgment: (1) jurisdiction;[4] (2) liability; and (3) damages." Pitts ex rel. Pitts v. Senecar Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). These matters will be discussed in Section IV, *infra*.

### III.  MOTION FOR SUMMARY JUDGMENT

While Plaintiff has alleged violations of the Copyright Act and the Communications Act of 1934, Plaintiff seeks a determination of liability and damages under the Copyright Act through its motion for summary judgment (and its motion for default judgment).

Under Section 501 of the Copyright Act, a defendant commits copyright infringement if he "violates any of the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). These rights include the right "to distribute copies . . . of the copyrighted work" and the right "to perform the copyrighted work publicly." Id. § 106(3) & (4). Plaintiff has shown, and Defendant Allen concedes,[5] that Plaintiff had the exclusive right to license the Program and that Defendant Allen, through his Level 9 business, aired the Program

---

[4] The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States. Further, the Court has personal jurisdiction over both Defendants because both are residents of Georgia and the commercial establishment out of which these claims arise is located within this district.

[5] As stated in Defendant Allen's responsive brief, "[t]he issue, therefore, is what damages the Plaintiff should recover." (Doc. 33 at 2.)

without paying the required licensing fee. Of course, this concession follows from the undisputed affidavit of Plaintiff's auditor, who patronized Level 9 on the evening of August 26, 2017 to gather evidence and who witnessed the Program being aired on three flat-screen televisions. (See Pl.'s St. of Undisputed Material Facts, Ex. C, Piracy Aff. of Donnell Spriggs.) Section 501 is a strict liability statute; intent or knowledge is not an issue. Thornton v. J. Jargon Co., 580 F. Supp. 2d 1261, 1275 n.6 (M.D. Fla. 2008); Joelsongs v. Shelley Broad. Co., 491 F. Supp. 2d 1080, 1084 (M.D. Ala. 2007). Accordingly, Plaintiff has established the liability of Defendant Allen as a matter of law.[6]

The Court turns to the issue of damages. Plaintiff seeks statutory damages, including enhanced statutory damages, under 17 U.S.C. §§ 504(c)(1) & (c)(2), and attorney's fees and costs under 17 U.S.C. § 505. Section 501(c)(1) provides for statutory damages of not less than $750 or more than $30,000. A finding of willfulness will allow an award of enhanced statutory damages under Section 501(c)(2) in an amount not to exceed $150,000. Defendant Allen insists that an award of $750 is appropriate and anything passed that is a question of fact.

---

[6] Level 9 did not exist in a corporate form in 2017. (See Allen Dep. at 16 (testifying that Level 9, LLC had been administratively dissolved in 2016). Accordingly, there are no issues of vicarious liability here. Even so, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements." Quartet Music v. Kissimmee Broad., Inc., 795 F. Supp. 1100, 1103 (M.D. Fla. 1992).

Defendant Allen is correct that there is a question of fact with respect to the amount of damages to be imposed. The United States Supreme Court has held that a Copyright Act litigant has a right to a jury trial to include a right to a jury determination of the amount of statutory damages. Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 355 (1998). However, in this case, neither Plaintiff nor Defendant Allen mentioned let alone demanded a jury trial in their pleadings as required by Federal Rule of Civil Procedure 38(b). In fact, the only place a jury demand is asserted is on the Civil Cover Sheet, filled out by Plaintiff, which clearly instructs that the "yes" box for a jury demand may be checked "only if demanded in complaint." (See Doc. 1.) This Civil Cover Sheet is administrative in nature and is insufficient to comply with Rule 38's demands. Creative Commnc'ns, LLC v. Iberiabank, 2014 WL 12696884 (M.D. Fla. May 12, 2014); Hollins v. Hoechst Celanese Corp., 134 F.R.D. 299, 300 (S.D. Ala. 1991) (cited cases omitted); see also, e.g., Shambreskies v. Bridgeport & Port Jefferson Steamboat Co., 2007 WL 1456223 (E.D.N.Y. May 16, 2007). Accordingly, the Court concludes that there has not been a proper demand for jury trial in this case by any party. The Court will therefore resolve the issues of fact with respect to damages.[7]

---

[7] The Court has before it all the evidence necessary to make a damages determination and therefore finds no reason to set this case for a bench trial.

Courts in this circuit consider the following factors when determining statutory damages: "(1) whether the defendant profited as a result of his violation; (2) whether the defendant assisted or induced others in violating the statute; (3) whether the defendant's violation was willful or flagrant; (4) whether the damages award will be sufficient to deter similar conduct; and (5) whether the damage award is comparable to awards in similar cases." Joe Hand Promotions, Inc. v. McGuire, 2019 WL 5285448, at *3 (N.D. Ga. Jan. 8, 2019) (quoted source omitted). Other specific factors to consider in the context of this case include:

> the number of patrons, the establishment's capacity, the number and sizes of televisions showing the program, whether the defendant promoted the program, whether the defendant charged a cover fee, whether the defendant charged premium prices for food and drinks during the program, whether the defendant had committed other violations, . . . and whether the defendant had acted willfully.

Joe Hand Promotions, Inc. v. Amos, 2019 WL 5618185, at *3-4 (S.D. Ga. Jun. 25, 2019) (quoting Zuffa, LLC v. Roldan, 2015 WL 12862924, at *8 (M.D. Fla. Aug. 13, 2015)). The Court has "wide discretion" in assessing damages and is "bounded only by the statutory limits." Id. at *4 (quoted source omitted).

In this case, Defendant Allen, through his promoter/manager, advertised the Program on the club's Facebook page. Part of the club's promotion offered to provide free food to its patrons, but the club charged a cover while the Program was being aired. The auditor, Mr. Spriggs, paid a cover of $10 when he entered that

9

evening. (Spriggs Piracy Aff.) Mr. Spriggs took a consistent headcount of 150 people on three separate occasions while the Program aired, indicating that the patrons stayed and presumably continued to drink adding to Defendant Allen's profit margin. (Id.) Contrarily, Defendant Allen testified that he took a big loss on the evening. (Allen Dep. at 25.) In any event, Defendant Allen profited in that he did not have to pay the licensing fee, which would have been $5200 for an establishment of 150 people.[8] (See Pl.'s St. of Undisputed Material Facts, Ex. F, "Rate Card".)

On the issue of willfulness, the Eleventh Circuit has stated that willfulness under the Copyright Act includes "reckless disregard of the possibility that one's actions are infringing a copyright." Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1272 (11th Cir. 2015) (quoted source omitted). Defendant Allen knew that the Program was promoted on Facebook days prior to its airing. On the other side of that, Defendant Allen was not in the club that evening, and he testified that they did not have a "Plan B" to show the Program, insisting that he had told Defendant Kittles that the Program would not be aired. (Allen Dep. at 22-24.) Yet, Defendant Allen testified that Defendant Kittles, "the face of the club," was compensated based solely upon the club's profit margin. (Id. at 8-9.) Defendant Allen further testified

---

[8] The Court views the evidence of Level 9's capacity in the light most favorable to Defendant Allen.

that he is often absent from the club when it is open, remarking that he placed trust in his staff to "do the right thing." (Id. at 11.) Finally, Defendant Allen testified that Defendant Kittles had certain discretion to select, promote, and run promotions for the club. (Id. at 15-16.) Discretion aside, however, Defendant Allen was the sole owner of Level 9 with ultimate responsibility. As such, he cannot simply walk away from the situation (i.e., a promoter who is paid only by successfully running a promotion and who must have felt obligated to air the Program after advertising it) and not take some responsibility for ensuring that his directions were followed. That is, Defendant Allen's "blind eye" approach was reckless given the situation as it presented itself the day the Program was set to air on his televisions in his club. Accordingly, while the Court does not necessarily find that Defendant Allen was willful in that he arranged to air the Program, his reckless disregard for the activities at his club mitigates against him.[9]

Finally, the Court considers that its damages award must serve as a deterrent. See Blue Seas Music, Inc. v. Fitness Surveys, Inc., 831 F. Supp. 863, 866 (N.D. Ga. 1993) ("The Eleventh Circuit has stressed deterrence as an important goal of statutory damages.") In fact, "[i]f the court were to award only the amount

---

[9] Also, the Court finds it unreasonable to believe that Defendant Allen, who counted the night's proceeds the night of or the morning after a club opening (see Allen Dep. at 9-11), would not have known that the Program was aired in his club until a lawsuit was filed.

of the license fee as statutory damages, [a defendant] would succeed in flouting the copyright laws with no net loss." Id.; U.S. Songs, Inc. v. Downside Lenox, Inc., 771 F. Supp. 1220, 1229 (N.D. Ga. 1991) ("[D]efendants who violate the copyright laws 'must be put on notice that it costs less to obey the copyright laws than to violate them.'" (quoted sources omitted)). As averred by Plaintiff's president, Mr. Joe Hand, Jr., the "unchecked activity of signal piracy" results in the loss of several millions of dollars of revenue and increases the costs of services of similar programs to legitimate residential and commercial customers. (Aff. of Joe Hand, Jr., Doc. 25-5, ¶ 11.) He further avers that the illegal practice continues because of a perceived lack of consequences. (Id. ¶ 12.)

While the Court understands Plaintiff seeks the maximum allowable damages amount of $150,000, such award would be unduly punitive. Instead, courts have awarded two and three times the amount of the proper licensing fee as an appropriate sanction in similar cases. See Zuffa, 2015 WL 12862924, at *9 (awarding double the licensing fee to "provide specific and general deterrence," while also avoiding "windfall to the plaintiff); Joe Hand Productions, Inc. v. Alburl, 2020 WL 836844 (N.D. Ala. Feb. 20, 2020) (collecting cases); see also Broadcast Music, Inc. v. CD Restaurant Group, LLC, 2019 WL 1905863, at *2 (M.D. Fla. Apr. 1,

2019) (noting that three times the licensing fee is appropriate in cases involving the public performance of copyrighted music).

Upon the foregoing, Plaintiff's motion for summary judgment (doc. 26) is **GRANTED** in that Defendant Allen is liable to Plaintiff for violation of the Copyright Act. The Court further finds it appropriate to award statutory damages in the amount of $10,400 to Plaintiff - an amount twice the license fee Defendant Allen would have paid Plaintiff had he legally purchased the right to air the Program.

### IV. DEFAULT JUDGMENT

In the Amended Complaint, Plaintiff has set forth factual allegations against Defendant Kittles, which are deemed admitted by reason of default, to establish a sufficient legal basis to hold Defendant Kittles liable for the unauthorized exhibition of the Program in a commercial setting. (E.g., Am. Compl. ¶ 9 (alleging that Defendant Kittles authorized the illegal display of the Program at Level 9).) Other evidence of record, including the deposition testimony of Defendant Allen and the Spriggs Piracy Affidavit, support a finding of liability. Moreover, the undisputed evidence shows that Defendant Kittles acted willfully in affirmatively and directly procuring an alternate but illegal method of airing the Program. Thus, it is appropriate to enter

default judgment against him on Plaintiff's copyright infringement claim, and the motion for default judgment (doc. 25) is **GRANTED**.

The Court, however, will not award a separate judgment of $10,400 against Defendant Kittles because the copyright infringement occurred on a single occasion. Instead, the responsible parties, Defendants Allen and Kittles, shall be liable, jointly and severally, to Plaintiff in the amount of $10,400. Defendant Kittles, however, is liable for an additional amount of $3000 because his conduct was more egregious and therefore more willful.

### V. ATTORNEY'S FEES AND COSTS

With respect to attorney's fees and costs, Section 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this titled, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Contrary to Defendant Allen's opposition, the statute does not condition an award of costs and fees on a showing of willfulness. See U.S. Songs, Inc., 771 F. Supp. at 1230. In this case, there is no dispute that Plaintiff's copyright was infringed by both Defendants Allen and Kittles. And, as explained previously, the Copyright Act is a strict liability statute. Additionally, Defendant Allen put Plaintiff through its paces of

14

establishing indisputable liability through discovery and summary judgment. Accordingly, the Court will exercise its discretion and award attorney's fees and costs in an amount to be determined.

## VI. CONCLUSION

In accordance with this Order, Plaintiff's motion for summary judgment (doc. 26) and its motion for default judgment (doc. 25) are **GRANTED**. Upon resolution of the attorney's fees and costs issue, the Court will enter judgment in favor of Plaintiff and against Defendants Allen and Kittles in the amount of $10,400, jointly and severally, with Defendant Kittles liable for an additional $3000. Plaintiff is instructed to file its application for attorney's fees and costs within fourteen (14) days hereof.[10]

Finally, the Court notes that Plaintiff's claims against Defendants under the Communications Act of 1934 remain pending. Plaintiff should notify the Court within the same fourteen-day time period whether it intends to pursue the claims.

**ORDER ENTERED** at Augusta, Georgia, this 19th day of March, 2020.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[10] The Court has an invoice for attorney's fees in its record (doc. 25) as against Defendant Kittles, but Plaintiff may augment, modify or consolidate this application for fees as it sees fit.